No. 1:10-cv-01612-TCB

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
_____

*In re* LORRAINE MCNEAL,
*Debtor.*
_____

LORRAINE MCNEAL

v.

GMAC MORTGAGE COMPANY

## BRIEF OF *AMICUS CURIAE* NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS

ROBERT COLLIERSMITH, ESQ.
ATTORNEY FOR *AMICUS CURIAE*
NATIONAL ASSOC. OF CONSUMER
  BANKRUPTCY ATTORNEYS
GEORGIA BAR NO. 662850
COLLIERSMITH & ASSOCIATES
3535 ROSWELL RD., STE. 7
MARIETTA, GA 30062
404-815-1600

August 19, 2010

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae*, the National Association of Consumer Bankruptcy Attorneys states that it is a nongovernmental corporate entity that has no parent corporations and does not issue stock.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ................................i

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF INTEREST OF *AMICUS CURIAE* .......................................1

ARGUMENT ......................................................................2

    I.    For purposes of bankruptcy, a claim is secured only to the extent there is value in the collateral to support the lien .................2

    II.    Permitting strip off of wholly unsecured liens in chapter 7 harmonizes the statutory language with *Nobelman, Tanner*, and *Dewsnup*. ..........................................................................4

    III.    *Talbert* and *Ryan* fail to reconcile the statutory language of section 506 with Supreme Court cases and cases from within their circuit ......................................................9

    IV.    Allowing debtor to strip off a lien that is secured in name only and that is not supported by any true economic value is consistent with the public policy goals of the Bankruptcy Code...13

        A. The Bankruptcy Code's policy is to treat similarly situated creditors equally. .........................................................13

        B. The application of 506(d) to high Loan-To-Value lenders is not "unfair."......................................................................14

CONCLUSION ..................................................................16

# TABLE OF AUTHORITIES

**Cases**

*In re Bartee*,
212 F.3d 277 (5th Cir. 2000) ............................................................5

*Dewsnup v. Timm*,
502 U.S. 410 (1992)......................................................6, 7, 10, 11, 16

*Dole v. United Steelworkers*,
494 U.S. 26, 35 (1990) ...................................................................4

*Duncan v. Walker*,
533 U.S. 167 (2001)......................................................................12

*In re Howard*,
184 B.R. 644 (Bankr. E.D. N.Y. 1995) .........................................9

*In re Griffey*,
335 B.R. 166 (B.A.P. 10th Cir. 2005) ............................................6

*In re Lane*,
280 F.3d 663 (6th Cir. 2002) ...............................................5, 9, 10

*In re Lavelle*,
2009 WL 4043089 (Bankr. E.D.N.Y. 2009) ............................8, 16

*In re Mann*,
249 B.R. 831 (B.A.P. 1st Cir.  2000).............................................6

*In re McDonald*,
205 F.3d 606 (3d Cir. 2000) ..........................................................5

*Nobelman v. American Sav. Bank*,
508 U.S. 324 (1993)...............................................3, 5, 6, 7, 10, 16

*In re Pond*,
252 F.3d 122 (2d Cir. 2001) ..........................................................5

*Ryan v. Homecomings Financial Network*,
253 F.3d 778 (4th Cir. 2001) ................................................................10, 12

*In re Sainlar*,
344 B.R. 669 (Bankr. M.D. Fla. 2006) ........................................................1

*In re Smith*,
1 Fed. Appx. 178 (4th Cir. 2001)(unpublished) ...........................................11

*In re Talbert*,
344 F.3d 555 (6th Cir. 2003) ...................................................................9, 12

*In re Tanner*,
217 F.3d 1357 (11th Cir. 2000) ...........................................................5, 6, 17

*United States v. Ron Pair Enter., Inc.*,
489 U.S. 235, 241 (1989) ..........................................................................3, 4

*United Student Aid Funds, Inc. v. Espinosa*,
130 S.Ct 1367 (2010) ...................................................................................1

*In re Zimmer*,
313 F.3d 1220 (9th Cir. 2002) .......................................................................5

## Statutes

11 U.S.C. § 103(a) ...........................................................................6, 12

11 U.S.C. § 506(a) ...........................................................................passim

11 U.S.C. § 506(b) ...................................................................................3

11 U.S.C. § 506(c) ...................................................................................3

11 U.S.C. § 506(d) ...........................................................................passim

11 U.S.C. § 1322(b)(2) ...................................................................4, 5, 10

**Legislative Materials**

H.R. Rep. No, 95-598, 95th Cong. 1st Sess. (1977)........................................ ...2

**Other Sources**

Thrift Bulletin TB 72, Office of Thrift Supervision, Department of the
Treasury, August 27, 1998......................................................................14

Paine's High LTC Specialist is Out," National Mortgage News, October 27,
1997, 1997 WL 12863567 ................................................................14

Broderick Perkins, Piggyback Loan Growth Poses Mortgage System,
Realty Times (July 13, 2005), available at
http://realtytimes.com/rtpages/20050713_piggyback.htm ................................15

## STATEMENT OF INTEREST OF NACBA

Incorporated in 1992, the National Association of Consumer Bankruptcy Attorneys ("NACBA") is a non-profit organization of more than 4,800 consumer bankruptcy attorneys nationwide.

NACBA's corporate purposes include education of the bankruptcy bar and the community at large on the uses and misuses of the consumer bankruptcy process.  Additionally, NACBA advocates nationally on issues that cannot adequately be addressed by individual member attorneys.  It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumer bankruptcy debtors.

The NACBA membership has a vital interest in the outcome of this case.  The Bankruptcy Code provides that wholly unsecured liens may be avoided.  Chapter 7 debtors often have liens on their residential properties, including junior mortgages that are frequently wholly unsecured.  These liens are subject to strip off under section 506(d) of the Code.  This application of the Code would afford the debtor the fresh start that is the cornerstone of bankruptcy.

**ARGUMENT**

**I.    For purposes of bankruptcy, a claim is secured only to the extent there is value in the collateral to support the lien.**

The interplay between sections 506(a) and 506(d) governs whether a wholly unsecured lien may be stripped off in a chapter 7.  Section 506(a) is designed to deal with the situation, not uncommon in bankruptcy, where a lien exceeds the current value of the property.   In relevant part, section 506(a) provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property…and is an unsecured claim to the extent that the value of such creditor's interest…is less than the amount of such allowed claim.

11 U.S.C. § 506(a). "[T]his section separates an undersecured creditor's claim into two parts—he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 356 (1977)(506 effectively "abolishes the use of the terms 'secured creditor' and 'unsecured creditor' and substitutes in their places the terms 'secured claim' and 'unsecured claim.'").

Subsection (d) [1] follows plainly from, and expands upon, section 506(a).  Specifically, 506(d) states that:  "[T]o the extent that a lien secures a claim against the debtor that is not an allowed *secured claim*, such lien is void…" (emphasis added).   The key to the treatment of the creditor's claim under 506(d) is whether it is an "allowed secured claim."  Therefore, the proper analysis of section 506(d) must begin with the application of 506(a).

The Supreme Court has repeatedly explained that section 506 "governs the definition and treatment of secured claims, i.e., claims by creditors against the estate that are secured by a lien on property" and that for bankruptcy purposes "a claim is secured only to the extent of the value of the property on which the lien is fixed." *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989).  The Court in *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993), correctly stated that after conducting a section 506(a) valuation, a partially secured claim will be divided into its secured and unsecured claim components. *Nobelman*, 508 U.S. at 329 ("The portion of the bank's claim that exceeds $23,500 is an 'unsecured claim componen[t]' under § 506(a)").  Under this analysis, a claim having no

---

[1] In subsections (b) and (c), Congress dealt with the situation in which "the value of [the property] is greater than the amount of" the lien and provided that interest and the expenses of "preserving or disposing of" such property could be recovered. 11 U.S.C. § 506(b), (c); *see United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 238-39 (1989).

secured component cannot be a secured claim under the Bankruptcy Code.

As a matter of common sense, a lien that attaches to nothing provides no

security to the lien holder.


**II.     Permitting strip off of wholly unsecured liens in chapter 7
          harmonizes the statutory language with *Nobelman, Tanner*, and
          *Dewsnup*.**

Section 506, like all provisions of Chapter 5 of the Bankruptcy Code,

applies uniformly under all substantive chapters.  It is anomalous, therefore,

to apply section 506(a) differently depending on whether a debtor files a

chapter 7, 11, 12 or 13.   The Bankruptcy Code should be construed

consistently and as a whole.  *See Dole v. United Steelworkers*, 494 U.S. 26,

35 (1990); *Ron Pair,* 489 U.S. at 241.

In *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993), the

Supreme Court considered the interplay between sections 506 and

1322(b)(2) of the Code.  The *Nobelman* Court held that in determining

whether a claim secured by residential property is entitled to protection from

modification under section 1322(b)(2) courts must first look to section

506(a) for a determination of the claim's secured and unsecured

components.  The Court held that if the lien is supported by at least some

value, the lien holder is the "holder of a secured claim" under the

Bankruptcy Code, and its claim may be entitled to protection under 1322(b)(2).  However, implicit in the *Nobelman* decision is the corollary principle that if the lien has no true economic worth based on the value of the underlying collateral, and is therefore totally unsecured, then the anti-modification provision does not come into play and the claim may be modified.

*Nobelman* remains in force today as applied to partially secured claims.  However, following the *Nobelman* decision, six courts of appeals, including the Eleventh Circuit, and two Bankruptcy Appellate Panels have correctly held that wholly unsecured junior liens are not protected by section 1322(b)(2) from strip off in a chapter 13. *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002); *In re Lane*, 280 F.3d 663 (6th Cir. 2002);  *In re Pond*, 252 F.3d 122 (2d Cir. 2001); *In re Tanner*, 217 F.3d 1357 (11th Cir. 2000); *In re Bartee*, 212 F.3d 277 (5th Cir. 2000); *In re McDonald*, 205 F.3d 606 (3d Cir. 2000); *In re Griffey*, 335 B.R. 166 (B.A.P. 10th Cir. 2005); *In re Mann*, 249 B.R. 831 (B.A.P. 1st Cir.  2000).  These courts have held that where the collateral value is insufficient to support at least part of the lien, the creditor does not hold a secured claim for purposes of bankruptcy.

Among the courts to reach this conclusion is the Eleventh Circuit Court of Appeals in *In re Tanner*, 217 F.3d 1357 (11th Cir. 2000).  In

accordance with *Nobelman*, the Eleventh Circuit held that "[s]ection 506(a) defines the unsecured components of debts according to the value of the underlying collateral." *Tanner*, 217 F.3d at 1358.  The *Tanner* court noted that extending protection to wholly unsecured claims "would vitiate the *Nobelman* Court's pronouncement that '[debtors] were correct in looking to § 506(a) for judicial valuation of the collateral to determine the status of the bank's secured claim.'" *Id.* at 1360.  The *Tanner* decision mandating that the value of the collateral determine the status of a creditor's claim as secured or unsecured pursuant to section 506(a), is equally applicable to chapter 7.  *See* 11 U.S.C. § 103(a).  This result is not inconsistent with the holding of *Dewsnup v. Timm,* 502 U.S. 410 (1992).

In *Dewsnup*, the debtor sought to avoid the portion of a $120,000 loan that exceeded the $39,000 value of the property.  Thus, the debtor sought to "strip down" a partially secured first lien, rather than "strip off" a wholly unsecured junior lien.  The Supreme Court rejected debtor's argument and stated that "the words [in 506(d)] should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured." *Dewsnup*, 502 U.S. at 415.  In the Supreme Court's view, the existence of some collateral sufficed to render the lien a secured claim.  Thus, the Court concluded that section 506(d) did not permit a chapter 7 debtor to strip down a creditor's lien to the

judicially determined value of the underlying collateral.  The Supreme Court in *Dewsnup* did not decide whether a completely unsecured lien would be void under section 506(d). Rather the *Dewsnup* court specifically contemplated a narrow interpretation of its decision.  *Id*. at 417 ("We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.").

The holding in *Dewsnup* is not at odds with the Supreme Court's decision in *Nobleman* and the Eleventh Circuit's decision in *Tanner*.  Rather all of these decisions and the plain language of the statute can be harmonized by applying a two-step process.  First section 506(a) should be applied to determine the status of the creditor's claim as secured, unsecured, or having both secured and unsecured components.  Only after this determination should the court turn to section 506(d).  Section 506(d) allows avoidance of a lien that is not an allowed secured claim.  If after the application of 506(a) the creditor holds a secured claim then the lien may not be avoided under section 506(d).  However, if the lien has no economic value because the collateral is insufficient to support it, then the wholly unsecured lien is avoidable under section 506(d).

This method gives meaning to all the statutory language and harmonizes the existing Supreme Court and Eleventh Circuit decisions.

The analysis was also recently adopted by the bankruptcy court in *In re Lavelle*, 2009 WL 4043089 (Bankr. E.D.N.Y. 2009). The court in *Lavelle* stated:

> In *Dewsnup*, where a portion of the value of the claim at issue exceeded the value of the property, the claim was both 1) allowed and 2) secured, albeit undersecured, for purposes of § 506(d). Because *part* of the claim was secured, it was considered a "secured claim" under § 506(a). Thus *Dewsnup*, does not allow the unsecured portion to be stripped down under § 506(d). However, where the claims are *totally* unsecured, there is no equity whatsoever for the junior lien to attach for purposes of § 506(a) because a creditor's claim is secured only "to the extent of the value of such creditor's interest in such property". With respect to a wholly unsecured lien, the creditor de facto only has an unsecured claim under § 506(a). Accordingly, the wholly unsecured claims cannot qualify as "allowed secured claims" under § 506(d), and must be voided.

*Lavelle,* 2009 WL 4043089 at *5; *see also In re Howard,* 184 B.R. 644 (Bankr. E.D. N.Y. 1995)(holding that a lien that is wholly unsecured within the meaning of 506(a) may be avoided in full under 506(d)).

### III.   *Talbert* and *Ryan* fail to reconcile the statutory language of section 506 with Supreme Court cases and cases from within their circuit.

In 2003, the Sixth Circuit addressed the question of whether chapter 7 debtors could strip off a wholly unsecured junior lien under 506(d). *In re Talbert*, 344 F.3d 555 (6th Cir. 2003). In concluding that strip off was not permitted, the *Talbert* court fails to even mention *Nobelman* or the binding precedent of *In re Lane*, 280 F.3d 663 (6th Cir. 2002). In *Lane*, which was decided only a year and a half earlier, the Sixth Circuit stated:

> Lawyers often think of any claim for repayment of a mortgage
> loan as a 'secured claim' whether or not the mortgage could
> actually realize anything at a foreclosure sale.  Under the
> bankruptcy code, however, '[a]n allowed claim of a creditor
> secured by a lien on property in which the estate has an
> interest…is a secured claim to the extent [and only to the
> extent] of the value of such creditor's interest in the estate's
> interest in such property.' Conversely, the claim 'is an
> unsecured claim to the extent that the value of such creditor's
> interest…is less than the amount of such allowed claim….

*Lane*, 280 F.3d at 665-66.  The *Lane* court continued:

> It is important, in this connection, to remember that just as
> "secured claims' is a term of art in the bankruptcy code . . .,
> 'unsecured claims' is a term of art too.  Courts subscribing to
> the minority position often ignore this; they proceed as if the
> phrase 'holders of unsecured claims' meant nothing more than
> claimants without any liens.  But when Congress divided the
> universe of claimants into those with 'secured claims' and those
> with 'unsecured claims,' it was not merely distinguishing
> between claimants possessed of security interests and claimants
> not possessed of such interests.  Insofar as claimants with
> homestead liens are concerned, rather, the dividing line drawn
> by § 1322(b)(2) runs between the lienholder whose security
> interest in the homestead property has some 'value,' see §
> 506(a), and the lienholder whose security interest is valueless.

*Lane*, 280 F.3d at 668.  Rather than attempting to reconcile the application

of section 506(a) in *Nobelman* and *Lane* with *Dewsnup*, the *Talbert* court

simply ignored these critical opinions.  The *Talbert* court concluded the

strip-down versus strip-off distinction was one without a difference.

However, it is evident from statutory language and the cited cases above that

the Bankruptcy Code treats undersecured and unsecured liens differently.

Similarly, the Fourth Circuit in *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001), found there was no distinction to be made between stripping down and stripping off under 506(d). The *Ryan* court agreed that the creditor's claim was unsecured, but nevertheless held that "an allowed unsecured consensual lien" may not be stripped off in a chapter 7. This conclusion directly contravenes the plain language of the statue that permits the avoidance of a lien that is not an allowed secured claim. Nowhere does the Code protect "allowed unsecured consensual liens" as described by the court. The *Ryan* court also reached its conclusion without mention of a Fourth Circuit case decided just six months earlier which permitted a chapter 7 debtor to avoid a lien that was wholly unsecured under section 506(d). *See In re Smith*, 1 Fed. Appx. 178 (4th Cir. 2001)(unpublished). In *Smith*, the bankruptcy court discerned nothing in the *Dewsnup* opinion that would preclude a worthless lien from being avoided to effectuate the broad policy goals of the bankruptcy laws. *Smith*, 1 Fed. Appx. at 181. The district court affirmed and the Fourth Circuit affirmed "the judgment below on the reasoning expressed by the lower courts in their memorandum of opinions." *Id*. at 181 (citations omitted).

Rather than reconcile the plain language of sections 506(a) and 506(d) with previous Supreme Court cases, the *Ryan* and *Talbert* courts blindly

extended the holding of *Dewsnup* beyond an interpretation that can be supported by the statute.  The courts created a framework in which section 506(a) applies differently in chapter 7 and chapter 13 despite the dictates of section 103(a).  *See* 11 U.S.C. § 103(a) (chapter 5 applies to cases under chapter 7, 11, 12, and 13).  The result also renders the word "secured" in section 506(d) superfluous because it is simply interpreted to mean a lien under state law.  Based on the reasoning of *Ryan* and *Talbert*, the outcome is exactly the same as if the statute said: "[T]o the extent that a lien secures a claim against the debtor that is not an allowed ~~secured~~ claim, such lien is void."  *Cf. Duncan v. Walker*, 533 U.S. 167 (2001) (it is a cardinal principle of statutory construction that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant." (internal quotation marks omitted)).  Lastly, these courts provide favored treatment for "allowed unsecured consensual liens" despite the fact that the Bankruptcy Code does not recognize any such kind of claim.

**IV.   Allowing debtor to strip off a lien that is secured in name only and that is not supported by any true economic value is consistent with the public policy goals of the Bankruptcy Code.**

**A.  The Bankruptcy Code's policy is to treat similarly situated creditors equally.**

The application of 506(a) is an integral part of the Bankruptcy Code's balance between the rights of secured and unsecured creditors.  It ensures that creditors with wholly unsecured junior liens receive the same treatment for their claims as other wholly unsecured creditors.  Disallowing avoidance of such a claim under 506(d) would allow a lien holder to enforce its pre-petition mortgage, possibly even foreclosing on the property, even though the lien has no economic value.  Such a ruling would violate the principle of equity among similarly situated creditors.

The strip off of wholly unsecured claims through the application of section 506(a) and 506(d) recognizes the real world economic rights of creditors in relation to the debtor's property at the time of the bankruptcy case.  Creditors are protected from avoidance of their liens only to the extent they have security with some economic value.  Beyond that, the bankruptcy policy of equity among creditors dictates that they be treated identically with other wholly unsecured creditors.

**B.  The application of 506(d) to high Loan-To-Value lenders is not "unfair."**

Courts have repeatedly noted a distinction between the first and second mortgage markets. Starting in the mid-1990's the second mortgage market expanded rapidly as lenders pushed high loan-to-value (LTV) mortgages. [2]  In issuing a warning to lenders about the risks involved with such loans in comparison to traditional mortgage loans, the Office of Thrift Supervision described the practice as follows:

> An increasing number of lenders are aggressively marketing home equity and debt consolidation loans, where the loans, combined with any senior mortgages, are near or exceed the value of the security property…Until recently, the high LTV home mortgage market was dominated by mortgage brokers and other less regulated lenders. Consumer groups and some members of Congress have expressed concern over the growth of these loans, and the mass marketing tactics used by some lenders.

Thrift Bulletin TB 72, Office of Thrift Supervision, Department of the Treasury, August 27, 1998, at 1. Lenders who make such high LTV loans, or no equity loans, take their illusory security in the debtor's home not for its economic value or the ability to foreclose, but for the threat of foreclosure.

Similarly, in the early 2000's, lenders aggressively pitched "piggyback" loans to borrowers unable to come up with a larger down payment, or any down payment at all. Piggyback loans feature two

---

[2] In 1995, home equity lenders had made $1 billion in high LTV loans. By 1997, the amount of these loans had increased to $8 billion. High Loan-To-Value Lending, General Accounting Office, GAO/GGD 98-169, August 13, 1998; Paine's High LTC Specialist is Out," National Mortgage News, October 27, 1997, 1997 WL 12863567.

mortgages—an 80 percent first mortgage and a second mortgage for 10, 15 or 20 percent of the purchase price.  The structure typically combined a traditional fixed-rate or adjustable-rate first mortgage with either a closed-end second lien or a home equity line of credit.  The risks of piggyback loans were well known to the second mortgage industry by mid-2005.  *See* Broderick Perkins, *Piggyback Loan Growth Poses Mortgage System, Realty Times* (July 13, 2005), available at

http://realtytimes.com/rtpages/20050713_piggyback.htm.  ("The potential for risk is that already over-extended home buyers will be left with an upside down mortgage should the bubble burst and price drop.")  The additional risks borne by piggyback and other high LTV lenders allowed them to charge higher interest rates on these second mortgages.  Now that the housing bubble has burst and home values have dropped, creditors can hardly argue that they were not aware of the potential risk that debtors would be left with upside down junior mortgages.

Lastly, chapter 7 debtors do not receive a "windfall" at the expense of high LTV lenders.  As the court in *Lavelle* aptly stated:

> Arguments that debtors will benefit from possible windfalls are not persuasive.  Markets are uncertain, and it is not certain such a scenario will ever occur.  Secondly, the creditors' right to foreclose will not result in any present monetary gain for the creditor since there is no value in the property for them.  Bankruptcy is not intended to benefit either the creditor in securing a potential increase in property value, or

the debtor.  However, where the future is unknown, bankruptcy principles of giving the debtor a fresh start should apply.  While these issues of debtors' and creditors' rights are the subject of long standing philosophical debate, in light of the unambiguous, clear language of § 506(a) and (d), § 506(d) requires this Court to void the lien as a matter of law regardless of any possible further potential debtor benefits.

*Lavelle,* 2009 WL 4043089 at *6.

Bankruptcy policy should not be used to protect piggyback and high LTV lenders who would not otherwise be protected outside of bankruptcy and who knowingly make riskier loans.  Any other result will create a perverse incentive for lenders to make high LTV loans knowing that they will gain an unfair advantage in bankruptcy.

### CONCLUSION

Reconciling the plain language of 506(a) and 506(d) with the Supreme Court's decisions in *Nobelman* and *Dewsnup* and the Eleventh Circuit Court of Appeals' decision in *In re Tanner* leads to only one conclusion: wholly unsecured liens may be stripped off in chapter 7.

Respectfully submitted,

_/s/_____
Robert Colliersmith, Esq.
Attorney for *Amicus Curiae*
National Assoc. of Consumer
  Bankruptcy Attorneys
Georgia Bar No. 662850
Colliersmith & Associates

3535 Roswell Rd., Ste. 7
Marietta, GA 30062
404-815-1600

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August, 2010, this "Brief of *Amicus Curiae* National Association of Consumer Bankruptcy Attorneys," was electronically filed with the Clerk for the United States District Court for the Northern District of Georgia and the following parties were served with a copy through the United States Mail, addressed to:

Richard H. Thomson
Counsel for Debtor, Lorraine McNeal
Clark & Washington, P.C.
3300 Northeast Expressway
Building 3
Atlanta, GA  30341

GMAC Mortgage Company
Corporation Service Company
40 Technology Parkway South, Ste. #300
Norcross, GA 30092

GMAC Mortgage, LLC
Corporation Service Company
40 Technology Parkway South, Ste. #300
Norcross, GA 30092

Homecomings Financial, LLC
Corporation Service Company
40 Technology Parkway South, Ste. #300
Norcross, GA 30092

_/s/_____
Robert Colliersmith, Esq.
Attorney for *Amicus Curiae*
National Assoc. of Consumer
  Bankruptcy Attorneys
Georgia Bar No. 662850

Colliersmith & Associates
3535 Roswell Rd., Ste. 7
Marietta, GA 30062
404-815-1600